IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 3, 2023

## T.J. MARTELL FOUNDATION FOR CANCER RESEARCH
## v. KRAFTCPAS PLLC ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 22C98    Amanda Jane McClendon, Judge**

_____

**No. M2022-01821-COA-R3-CV**

_____

This appeal followed the trial court's certification of a final judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure.  Because we conclude that the trial court's certification was improvidently granted, we dismiss the appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Michael E. Richardson, Chattanooga, Tennessee, for the appellant, T.J. Martell Foundation for Cancer Research.

Lela M. Hollabaugh and Virginia N. Adamson, Nashville, Tennessee, for the appellee, KraftCPAs PLLC.

## MEMORANDUM OPINION[1]

Among other matters, the present litigation involves claims between the Appellant herein, T.J. Martell Foundation for Cancer Research ("the Foundation"), and KraftCPAs PLLC ("Kraft").  As alleged in the complaint filed by the Foundation in this case, the

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value.  When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Foundation and Kraft previously entered into a contractual relationship pursuant to which Kraft would provide accounting services to the Foundation.

According to the Foundation, in the year 2020, it discovered certain financial irregularities concerning expenses incurred by Melissa Goodwin, its now-former Executive Vice President and General Manager. The Foundation alleged that Kraft had never identified or reported these irregularities "even though they dated back to at least 2018," and it further averred that it had learned from an internal investigation that "millions of funds had been misappropriated." In seeking damages against Kraft, the Foundation asserted claims for professional negligence and breach of contract.

During the pendency of the trial litigation, Kraft filed a counterclaim against the Foundation, asserting, among other things, that the *Foundation* was the party who had breached the parties' 2018, 2019, and 2020 contracts.[2] As one of the bases for these alleged breaches, Kraft averred that the Foundation "fail[ed] to prevent and detect the fraud of Goodwin." Kraft further asserted that the parties' yearly contracts had been breached by dint of the Foundation's assertion of negligence and breach of contract claims against it. Kraft's filing reflected that it considered the claims against it to be "released" under the parties' contracts, and it contended that "[a]s a direct result of [the Foundation's] breach of contract, Kraft has been damaged by the expenditure of monies for the defense of these released claims." Regarding the parties' 2019 and 2020 contracts, Kraft alleged that the Foundation was also in breach for "failing to design, implement, and maintain internal controls."

The claims against Kraft were ultimately dismissed by the trial court, with the trial court specifically concluding that an exculpatory provision in the parties' contracts applied so as to bar the claims. In resolving the claims asserted by the Foundation against Kraft, the trial court certified that matter as final under Rule 54.02 of the Tennessee Rules of Civil Procedure, stating, without further explanation, that "there is no just reason for delay." The trial court then stated that all other matters were reserved.

An appeal to this Court followed, and the case was submitted for a decision on the parties' filed briefs.[3] Upon an initial review of the record, however, we entered an order questioning our ability to proceed with the appeal. In relevant part, our order stated as follows:

---

[2] We further note that another type of contract between the parties, an "Internal Investigation Contract," was also at issue in the counterclaim.

[3] Although the Foundation initially requested oral argument in this appeal, counsel for the Foundation later filed a motion to waive oral argument, citing a medical emergency.

> Insofar as the record transmitted to us on appeal admits, included among the unadjudicated reserved issues is a counterclaim by Kraft. The counterclaim, among other things, avers that Plaintiff breached the parties' yearly contracts by asserting negligence and breach of contract claims and states that, "[a]s a direct result of [Plaintiff's] breach of contract, Kraft has been damaged by the expenditure of monies for the defense of these released claims." It appears that these unadjudicated matters are clearly intertwined with the appealed issues, and we note that "[t]his Court may conclude that Rule 54.02 certification was improvidently granted where 'the issue which the trial court declared final and appealable is inextricably linked with the remaining issues not yet decided.'" *Ingram v. Wasson*, 379 S.W.3d 227, 238 (Tenn. Ct. App. 2011) (quoting *Crane v. Sullivan*, N01A01-9207-CH-00287, 1993 WL 15154, at *2 (Tenn. Ct. App. Jan. 27, 1993)).

The parties have since acknowledged in supplemental briefing that Kraft's counterclaim in fact remains pending, and as discussed below, we conclude that the outstanding counterclaim countenances against proceeding to hear this appeal.

Notwithstanding the fact that Rule 54.02 allows trial courts to "convert an interlocutory ruling into an appealable order," *Mann v. Alpha Tau Omega Fraternity*, 380 S.W.3d 42, 49 (Tenn. 2012), a trial court's decision to certify a judgment as final under the rule is limited. Indeed, the Tennessee Supreme Court has instructed that certifications under Rule 54.02 should not be entered routinely or as a courtesy to counsel. *Harris v. Chern*, 33 S.W.3d 741, 745 n.3 (Tenn. 2000). "Piecemeal appellate review is not favored." *Id.*

Even assuming that an order certified as final under Rule 54.02 does in fact properly dispose of one claim or party so as to make the rule applicable,[4] the certification is not insulated from appellate review. To assess whether the certification can ultimately stand, we review the trial court's determination that there was "no just reason for delay" for an abuse of discretion. *Adkins v. Adkins*, No. M2018-00890-COA-R3-CV, 2020 WL 9602029, at*4 (Tenn. Ct. App. Dec. 22, 2020). In providing an overview of the factors that should be considered incident to a certification decision under Rule 54.02, Judge Bennett, writing for this Court, previously explained as follows:

> Although trial courts have considerable discretion in making the determination that there is no just reason to delay appellate review, such a determination is subject to reversal if the court "fails to 'weigh and examine the competing factors involved in the certificat[ion] decision.'" *GenCorp.*,

---

[4] *See* Tenn. R. Civ. P. 54.02 (allowing the court to "direct the entry of a final judgment as to one or more but fewer than all of the claims or parties").

23 F.3d at 1030 (quoting *Solomon v. Aetna Life Ins. Co.*, 782 F.2d 58, 61-62 (6th Cir. 1986)). The Sixth Circuit has set out a list of factors to be considered when making this determination:

> "(1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obligated to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense and the like."

*Id.* (quoting *Corrosioneering, Inc. v. Thyssen Envtl. Sys., Inc.*, 807 F.2d 1279, 1283 (6th Cir. 1986)). This court has adopted these same factors. *Newell v. Exit/In, Inc.*, No. M2003-00434-COA-R3-CV, 2004 WL 746747, at *2 (Tenn. Ct. App. Apr. 7, 2004); *Cates*, 1991 WL 168620, at *3.

*Fed. Nat'l Mortg. Ass'n v. Quarles*, No. M2015-01620-COA-R3-CV, 2016 WL 5723957, at *6–7 (Tenn. Ct. App. Sept. 30, 2016).

The trial court in this case did not examine any of these factors or provide any justification behind its Rule 54.02 certification decision, and upon our review of the record and consideration of the standards governing Rule 54.02 certification decisions, we conclude that the certification made by the trial court here was improvidently granted. Indeed, in our view, the Foundation's claims should not be separated from certain portions of the counterclaim that remain pending. Initially, we note what we alluded to in our prior order wherein we questioned our ability to proceed with this appeal: the basis upon which the trial court granted dismissal of the Foundation's claims, i.e., the applicability of the contracts' exculpatory provision, appears to be one of the very bases that Kraft has asserted in support of its own breach of contract claim. Indeed, Kraft's counterclaim regarded the Foundation's claims as "released claims" and asserted that the Foundation breached the parties' contracts through, among other things, its very assertion of negligence and breach of contract claims. Moreover, the parties' competing breach of contract claims both may, naturally, require us to consider the parties' respective responsibilities under the contracts, and it does not serve judicial economy in this Court for piecemeal review to occur. Regarding this concern, we note that one of the arguments Kraft has proffered in defense of the present appeal is that the Foundation "failed to plead or prove any breach of contract claim against Kraft because it failed to establish 'a deficiency in the performance amounting to a breach.'" Kraft has specifically

argued, for instance, that although the Foundation has alleged that Kraft breached the contracts by failing to identify irregularities in the Foundation's records, it was the Foundation that was responsible for implementing internal controls. This issue of the Foundation's responsibility, however, is also one of the bases that Kraft has asserted in support of its counterclaim. As we noted earlier, Kraft alleged that the Foundation was in breach with respect to the 2019 and 2020 contracts for "failing to design, implement, and maintain internal controls." Similarly, whereas Kraft argues on appeal—in support of affirming the dismissal of the Foundation's claims—that the Foundation was responsible for the detection of fraud, its counterclaim implicates the same general concern and specifically asserts that the Foundation breached the parties' contracts by failing to detect fraud.

Because we conclude that the trial court's Rule 54.02 certification was improvidently granted, we dismiss this appeal and remand the case for such further proceedings that are necessary and consistent with this Opinion.

    s/ Arnold B. Goldin  
ARNOLD B. GOLDIN, JUDGE